## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **FIP REALTY CO., LTD,** | : | |
| | : | **Case No. 2:19-cv-03291** |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| **INGERSOLL-RAND PLC ET AL.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

## I. INTRODUCTION

Currently before the Court is a Motion for Summary Judgment by Defendants Ingersoll-Rand PLC, Ingersoll-Rand Company, and Trane U.S., Inc. f/k/a American Standard, Inc. (collectively, "Defendants") (ECF No. 27). This matter is fully briefed and ripe for review. For the following reasons, this Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment.

## II. BACKGROUND

This action concerns the alleged release and disposal of hazardous substances by Defendants at the eastern portion of the Federal Industrial Park owned by Plaintiff FIP Realty Co., Ltd. ("FIP Realty" or "FIP") in Columbus, Ohio ("FIP Site" or "Site"). FIP Realty seeks to recover from Defendants the costs of environmental investigation and remediation that it performed at the FIP Site between 2010 and 2016. FIP Realty has asserted four claims for relief against Defendants: (1) cost recovery under Section 107(a)(4) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") (Count One) (the "Section 107 Cost

1

Recovery Claim"); (2) contribution under Section 113(f)(3)(B) of CERCLA (Count Two) (the "Section 113 Contribution Claim"); (3) a declaratory judgment concerning Defendants' liability for future response costs under Section 113(g)(2) of CERCLA (Count Three) (the "Claim for Declaratory Judgment"); and (4) cost recovery under the Ohio Voluntary Action Program ("VAP") statute, Ohio Rev. Code § 3746.23(C) (Count Four) (the "Ohio VAP Claim").

The FIP Site, which consists of five parcels, was developed for industrial use beginning in the early 1900s. According to FIP Realty, since the Site's original development, raw materials and hazardous waste products have been used, generated, released, and disposed of by former owners and operators at the Site. (ECF No. 28 at 2).

The largest parcel on the Site has been used by Ingersoll-Rand's predecessors, American Blower Corp. ("American Blower") and American Standard, Inc. ("American Standard"), since 1936. (*Id.* at 2−3). From 1936 to 1957, American Blower used the Site to operate a facility that manufactured fans and blowers, and it allegedly released volatile organic compounds ("VOCs"), such as trichloroethylene ("TCE") and vinyl chloride, in connection with its manufacturing operations. (*Id.* at 3). In 1957, American Blower became a division of American Standard and continued operating an air conditioning and heating manufacturing facility at the Site. (*Id.*). FIP Realty alleges that American Standard also caused the release and disposal of hazardous substances, including TCE. (*Id.*). In 1970, Federal Paper Board Company, Inc. and its subsidiary, Federal Glass Company, assumed control over and began operating at the FIP Site. (Pandey Dep. 177:8−13; 178:2−6; 178:11−18). Recent sampling at the Site confirms that the Site's soil and groundwater is contaminated with TCE and its degradation productions. (Decl. Gregory J. DeGulis, ECF No. 28-12, Ex. L).

FIP Realty Co. acquired the FIP Site in 1999, and its affiliate, FIP Realty (the Plaintiff), acquired the property out of receivership in 2010. (ECF No. 27 at 3). FIP Realty retained several consulting firms to investigate the Site's conditions. (ECF No. 28 at 4). In 2010, FIP Realty hired Pandey Environmental LLC ("Pandey Environmental") to guide FIP through the process of participating in the Ohio Voluntary Action Program ("VAP"), pursuant to Ohio Rev. Code § 3746 and Ohio Admin. Code §3745-300. The Ohio Environmental Protection Agency ("Ohio EPA") regulates the VAP, which allows a property owner to investigate and remediate voluntarily a site impacted by hazardous substances, thus protecting itself from future environmental suits. Atul Pandey ("Mr. Pandey") served as the Certified Professional under the VAP and worked closely with both FIP and the Ohio EPA during the VAP investigation and remediation for the FIP Site. (Pandey Dep. 13:20−14:14; 25:10−16, ECF No. 28-3).

Pursuant to the VAP, FIP and Pandey Environmental completed Phase I and Phase II investigation and remediation work at the FIP Site, and Mr. Pandey sent a No Further Action Letter ("NFA Letter") to the VAP District Coordinator at the Ohio EPA on July 22, 2016. (ECF No. 28 at 4).[1] On July 25, 2016, the Ohio EPA received FIP's NFA Letter. (Decl. of Steve C. Coffaro, ECF No. 27-3). Mr. Pandey later submitted addenda to the NFA Letter, on both October 17, 2016 and November 10, 2016.

On December 19, 2016, the Director of Ohio EPA issued to FIP in response to its NFA Letter the Director's Final Findings and Orders and Covenant Not to Sue ("Final Orders and Covenant" or "Final Orders"). (ECF No. 28-8, Ex. H). The Final Orders and Covenant are a formal Ohio EPA Order, constituting a "final" action of the Director and triggering a 30-day period for

---

[1] The content of the NFA Letter is regulated by Ohio law and is often hundreds of pages in length. (ECF No. 28 at 4).

an administrative appeal to the Environmental Review Appeals Commission ("ERAC"), pursuant to Ohio Rev. Code § 3745.04. (ECF No. 28 at 6). FIP Realty then filed its Complaint in this action on July 29, 2019, seeking to recover the costs it incurred in voluntarily remediating the FIP Site. (Compl., ECF No. 1).

### III. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

4

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

Summary judgment on statute of limitations grounds is appropriate if the limitations period has run and if there is no genuine issue of material fact as to when the plaintiff's cause of action accrued. *Campbell v. Grand Trunk Western R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) (citing *Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092, 1094 (7th Cir. 1990)). The statute of limitations is an affirmative defense, so the defendant carries of the burden of showing that the statute of limitations has run. *Id.*

## IV. LAW & ANALYSIS

Defendants seek summary judgment on each of FIP's claims, advancing two categories of arguments. First, Defendants argue that each of FIP's four claims is either time-barred or unavailable due to statutory constraints. Alternatively, Defendants argue that FIP has not put forth sufficient evidence to prove that Defendants were responsible for the release of any hazardous substances at the FIP Site. The Court considers each of these arguments in turn below.

**A. Whether FIP's Claims Are Time-Barred or Otherwise Unavailable**

Defendants seek summary judgment on each of FIP Realty's claims due to lack of viability. Specifically, they allege that Counts One, Three, and Four are time-barred and that Count Two does not satisfy required statutory conditions.

As a preliminary matter, CERCLA establishes two types of claims to recover costs related to remediating hazardous waste. A cost recovery action is available under Section 107 and allows an innocent party (sometimes the Government itself) to recover the costs of cleanup from an owner or operator, past operator, transporter, or arranger. *See Acushnet Co. v. Mohasco Corp.*, 191 F.3d 69, 74 (1st Cir. 1999). A party that is found liable under Section 107 may in turn bring an action for contribution against other polluters under Section 113(f). Said another way, "CERCLA allows for full recovery of costs from a party sued successfully under Section 107, [and] it also permits that party to seek contribution from other parties that have helped create a hazardous waste problem." *United States v. Davis,* 261 F.3d 1, 28−29 (1st Cir. 2001) (quoting *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 936 (8th Cir. 1995)). CERCLA permits courts to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9631(f). Here, FIP brings both a cost recovery claim and a contribution claim under CERCLA, as well as a request for declaratory judgment under CERCLA and a claim for additional recover under Ohio's VAP statute.

1. Section 107 Cost Recovery Claim (Count One)

Defendants argue that FIP's Cost Recovery Claim pursuant to Section 107 is time-barred because FIP did not pursue the claim within the statute of limitations. CERCLA imposes a three-year statute of limitations on a party's right to pursue cost recovery after completing a removal action, and a six-year limitation period after completing a remedial action. 42 U.S.C. § 9613(g)(2).

Defendants acknowledge that FIP seeks to recover costs for the remedial work it performed at the FIP Site, and that the six-year statute of limitation applies. (ECF No. 27 at 14; Decl. of Steven C. Coffaro, Esq. at Section 3.0, ECF No. 27-3, Tab B).

Under CERCLA, the limitation period begins when physical, on-site construction of the remedial action commences. 42 U.S.C. § 9613(g)(2). FIP Realty filed its Complaint in this case on July 29, 2019. (ECF No. 1). Accordingly, for the action to be timely, FIP cannot have begun on-site construction of the remedial actions at the FIP Site before July 29, 2013. Defendants point to evidence in this case demonstrating that physical, on-site construction began at the FIP Site before July 29, 2013. For example, FIP installed an ISOTEC chemical oxidation and injection system to remediate the soil and groundwater contamination at the Site prior to 2002. (Pandey Dep. at 203−04; ECF No. 27-1). Additionally, FIP installed a soil vapor extraction ("SVE") system at the FIP Site for remedial purposes prior to May 2013. (*Id.* at 46−50).

FIP indicated that it does not oppose Defendants' argument about its Cost Recovery Claim under CERCLA § 107(a)(2) in its Reply Brief. (ECF No. 28-1 at 11). Because FIP has conceded this claim and Defendants have met their burden by showing that the statute of limitations has run, the Court **GRANTS** summary judgment to Defendants on Count One.

### 2. Section 113 Claim for Declaratory Judgment (Count Three)

FIP has requested the Court to grant declaratory judgment as to Defendants' liability for future response costs at the FIP Site, pursuant to CERCLA § 113(g)(2). FIP submits that it will continue to incur necessary response costs in investigating and remediating environmental contamination at the Site, and that these response costs are recoverable under CERCLA § 107(a)(4)(B). (ECF No. 1 at 12). Defendants, on the other hand, argue that FIP's claim for declaratory relief is precluded because the predicate claim under Section 107(a) is time-barred.

Section 113(g)(2) describes the statutes of limitations for "initial action[s] for recovery of the costs referred to in section 9607 of this title[.]" 42 U.S.C. § 9613(g)(2). After defining the limitations periods, Section 113(g)(2) further provides that:

> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

*Id*. Defendants read this statute to mean that FIP is prohibited from recovering future costs under Section 113(g)(2) because its claim for past costs under Section 107(a) is time-barred. (ECF No. 27 at 16−17). FIP did not respond to this argument in its Reply Brief.

The Sixth Circuit does not offer any precedent on the availability of declaratory judgment on future cost liability when a CERCLA plaintiff fails to establish liability for its past costs. Other circuits have taken divergent approaches to this issue. *See City of Colton v. Am. Promotional Events, Inc.-W*, 614 F.3d 998, 1006−07 (9th Cir. 2010). The Second, Third, Eighth, and Ninth Circuits each require a valid predicate claim in order to grant declaratory judgment on future costs. *See, e.g.*, *Gussack Realty Co. v. Xerox Corp.,* 224 F.3d 85, 92 (2d Cir. 2000) (per curiam); *United States v. Occidental Chem. Corp.,* 200 F.3d 143, 153–54 (3d Cir.1999); *Trimble v. Asarco, Inc.,* 232 F.3d 946, 958 (8th Cir. 2000), *overruled on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546 (2005); *In re Dant & Russell, Inc.*, 951 F.2d 246, 248 (9th Cir. 1991). The First and Tenth Circuits, however, will declare future liability and/or award future costs to CERCLA plaintiffs even when they fail to bring a claim for past costs within the limitations period, in certain circumstances. *See, e.g.*, *Davis*, 261 F.3d at 46; *Cnty. Line Inv. Co. v. Tinney,* 933 F.2d 1508, 1513 (10th Cir. 1991) (per curiam).

*a. Circuits That Require a Valid Predicate Claim*

Of the six circuits that have considered this issue, the majority hold or suggest that recoverable past costs under Section 107 are a necessary condition for declaratory relief for future costs under Section 113(g)(2). In support, these circuits generally rely on statutory language, CERCLA's overall purpose, and the purpose of declaratory judgments.

For example, the Ninth Circuit emphasizes that Section 113(g)(2) pertains to "liability for response costs,"[2] and deduces that this liability "must refer to the response costs of an initial cost-recovery action, given that the sentence later refers to 'any *subsequent* action or actions to recover *further* response costs.'" *City of Colton*, 614 F.3d 998, 1007−08 (9th Cir. 2010) (emphases in original) (citing 42 U.S.C. § 9613(g)(2)). The Eighth Circuit adopts a similar rationale:

> These sections [§§ 9607 and 9613] envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard. They can then go to court and obtain reimbursement for their initial outlays as well as a declaration that the responsible party will have continuing liability for the cost of finishing the job.

*Trimble*, 232 F.3d at 958 (quoting *In re Dant*, 951 F.2d at 248; *see also Gussack Realty Co.*, 224 F.3d at 92. In other words, "Congress specified a mechanism whereby a declaration of liability for costs already incurred has a preclusive effect in future proceedings as to costs yet to be incurred." *City of Colton*, 614 F.3d at 1007−08. Because Congress does not explicitly provide a mechanism for declaration of future liability, these courts conclude that "declaratory relief is available only if liability for past costs has been established under section 107." *Id.* (quoting *Transam. Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19−20 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy of remedies, a court must be chary of reading others into it.")).

---

[2] The current version of Subsection 113(g)(2) is titled "Actions for recovery of costs."

The circuit courts have also looked to legislative purpose when considering the availability of declaratory relief absent the establishment of past liability. In the *City of Colton*, the plaintiff encouraged the court to grant declaratory relief on future liability even though it failed to establish present liability, due to "its conceded failure to comply with" CERCLA requirements. 614 F.3d at 1007. The plaintiff argued that a different result would discourage private parties from taking future action to remove hazardous materials, contrary to CERCLA's primary goal. *Id.* at 1008. The court rejected this characterization of the statute's purpose, explaining that CERCLA's aim is not simply to motivate private response, but also to "make the party seeking response costs choose a cost-effective course of action to protect public health and the environment and to achieve a CERCLA-quality cleanup." *Id.* (internal quotations omitted) (quoting *Carson Harbor Vill. v. Cnty. of L.A.*, 433 F.3d 1260, 1265 (9th Cir. 2006)). The court concluded that declaratory relief aimed only at future compliance would not incentivize private parties to ensure their initial cleanup efforts were timely, and that "CERCLA's purposes would be better served by encouraging a plaintiff to come to court only after demonstrating its commitment" to undertake cleanup efforts. *Id.*

Finally, the Ninth Circuit maintains that declaring future liability without first establishing past liability would contravene the purpose of declaratory relief itself, which is "to economize[] on judicial time." *City of Colton*, 614 F.3d at 1008 (citing *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 616 (7th Cir. 1998)). According to the court, awarding judicial relief before a plaintiff has incurred recoverable costs and before establishing liability would undermine this purpose. Courts would have to determine which defendants are responsible and to what extent without the plaintiff ever "meet[ing] its burden of proving in an adversary proceeding that its expenses were necessary and incurred in a manner consistent with the national contingency plan." *Id.* (quoting *Stanton Road Assocs. v. Lohrey Enters.*, 984 F.2d 1015, 1023 (9th Cir. 1993)).

*b. Circuits That Do Not Require a Predicate Claim*

The First and Tenth Circuits arrive at the opposite conclusion. For the First Circuit, CERCLA's text does not explicitly "preclude an interpretation that declaratory relief is available" for future costs before liability has been established in a predicate claim. *Davis*, 261 F.3d at 46 (citing *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1191 (9th Cir. 2000)). Similarly, the Tenth Circuit "recognize[s] that there are some circumstances in which a CERCLA plaintiff may be entitled to a declaration of the defendant's liability even though the plaintiff has not yet established that its claimed response costs were incurred consistent with" other CERCLA requirements. *Tinney*, 933 F.2d at 1513. *Tinney* recognizes at least two such circumstances. One occurs when the factual record does not permit the court to determine whether the costs comply with CERCLA requirements at the time the motion for summary judgment is filed. *Id.* The second occurs when the plaintiff seeks only a declaration of the defendant's liability for future costs incurred consistent with statutory requirements. *Id.*

In *Davis*, the First Circuit primarily focused on whether declaratory relief was proper under Section 9613(g) when the predicate claim was a contribution action, and past liability had not yet been established for a potentially responsible party ("PRP"). *Davis*, 261 F.3d at 45−47. The district court had dismissed one company's contribution claims against a PRP for *past* cleanup costs "on the ground that the company had not paid for the cleanup before the close of discovery." *Id.* In other words, the company did not make out its prima facie case for the contribution claim and therefore did not have a valid predicate claim. The district court initially doubted whether the company was entitled to declaratory relief on future costs due to uncertainty over the total amount, but it ultimately decided it could allocate liability among the various parties based on the available facts before it. *See id.* To make this determination, the district court analyzed whether the company

11

had proven each of four statutory elements with respect to the future costs sufficient to make out a prima facie case. *Id.* at 29. The court of appeals upheld the district court's equitable allocation of each party's liability through declaratory relief, affirming that the declaratory judgment provision of CERCLA applies to both past and future contribution actions. *Id.* The court explained that CERCLA's purposes, which it described as "expeditious remediation at waste sites," "adequate compensation[,]" and "the imposition of accountability" are best served through the "achievement of prompt settlement." *Id.* at 26. The court noted that the land owner had already excavated, removed, and properly disposed of hazardous materials and explained that finding "this progress inadequate would frustrate the statute's purpose." *Id.* at 27.

*Tinney* also presented a situation where "a fully developed record" allowed the court to determine whether the future costs would be consistent with CERCLA requirements. 933 F.2d at 1513. There, the district court granted summary judgment against the company seeking future costs because they failed to establish a prima facie case. *Id.* Specifically, the court found that the company did not prove that its remedial actions were consistent with required standards and procedures. It said that evaluation for conformity at that stage was appropriate "in order to determine whether Plaintiffs are entitled to recover any of their response costs and to avoid useless trial of the case at a later juncture." *Id.* at 1512. Although the court ruled against the companies, it also held that a CERCLA plaintiff's failure to establish liability for its past costs does necessarily prevent its bid to obtain declaratory judgment as to liability for its future costs.

This Court agrees with these latter cases in so far as they do not require a valid predicate cost recovery claim to warrant a declaratory judgment on future liability. First, the statute's language does not condition declarations of future cost liability on valid past claims. Second, CERCLA is a remedial statute that aims to involve the tortfeasors that contributed to a site's

contamination in the site's cleanup. *See Tinney*, 933 F.3d at 1515 ("Contribution is available under CERCLA because of the statute's imposition of joint and several liability, regardless of fault. . . ."). Permitting some tortfeasors to escape cleanup responsibility on a procedural basis (e.g., when the current landholder does not bring a timely action to recover its own past costs) does not comport with this goal. *Davis*, 261 F.3d at 26; ("The purposes of CERCLA include expeditious remediation at waste sites, adequate compensation to the public fisc and the imposition of accountability."). Rather, allowing a company to seek declaratory judgment on another actor's future liability better ensures that all who contributed to a site's hazardous waste will share the burden of future removal costs, so long as other statutory requirements are satisfied. Accordingly, the Court **DENIES** summary judgment to Defendants on Count Three.

This Court, however, cannot adequately consider FIP's request for declaratory judgment until the parties provide a detailed discussion on the merits of such a determination. In particular, the parties should address liability for and allocation of future response costs, both in terms of constitutional and prudential ripeness. They should also address the degree to which FIP's claims for future costs satisfies the elements of a prima facie case. Accordingly, the Court holds resolution of Count Three in abeyance until the parties file supplemental briefing on this issue.

### 3. Section 113(f) Contribution Claim (Count Two)

FIP Realty also brings a contribution claim against Defendants under Section 113(f), but Defendants argue that FIP cannot do so because it has not satisfied either required statutory trigger.

Under CERCLA, a plaintiff has a valid contribution claim against a potentially liable party if one of the following statutory conditions applies: (1) the government has compelled the plaintiff to clean a site, or the government or a private party has brought a cost recovery action against the plaintiff; or (2) the government responded to a hazardous site and then entered a settlement

agreement with the plaintiff  to compensate the government for its costs. *Fla. Power Corp. v. FirstEnergy Corp.* ("*Florida Power*"), 810 F.3d 996, 1000 (6th Cir. 2015) (citing *Cooper Indus. v. Aviall Servs., Inc.*, 543 U.S. 157, 166−67 (2004)); *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 767−68 (6th Cir. 2014)*; see also* 42 U.S.C. §§ 9613(f)(1) and (f)(3)(B). In this latter scenario, at issue here, the plaintiff may seek contribution from a person who is not party to the agreement if it has resolved "its liability to the United States or a State for some or all of a response action or for some or all of the costs of any such action in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f)(3)(B).

CERCLA does not specifically define the phrase "administrative or judicially approved settlement," but the defining feature is that the agreement resolves the plaintiff's liability to the government "for some or all of a response action or for some or all of the costs of such action." *Hobart*, 758 F.3d at 768 (internal citations omitted); *see also ITT Indus. v. BorgWarner, Inc.* ("*ITT Industries*"), 506 F.3d 452, 460−61 (6th Cir. 2007); 42 U.S.C. § 9613(f)(3)(B). To determine whether a plaintiff has resolved its liability through the settlement, courts "look to the specific terms of the agreement." *Fla. Power Corp.*, 810 F.3d at 1001 ("Whether or not liability is resolved through a settlement simply is not the sort of question which can or should be decided by a universal rule. Instead, it requires a look at the terms of the settlement on a case-by-case basis."). In interpreting the agreement, the Court applies state contract law. *See id.*, 810 F.3d at 1001.

The Final Orders and Covenant outline the procedural steps Ohio EPA and FIP Realty took prior to entering the agreement. The Final Orders also summarize the voluntary actions that FIP Realty took to investigate and remedy the FIP Site, explain the standards used to assess the FIP Site, and issue orders, including the Ohio EPA's covenant not to sue:

1. Based on the NFA letter, and subject to all conditions set forth in these Findings and Orders, including but not limited to the terms and conditions of the O&M

Agreement, Ohio EPA hereby covenants not to sue and releases FIP Realty Co., Ltd., and its respective agents, employees, members, shareholders, officers, directors, successors and assigns, and successors and assigns of the Property, from all civil liability to the States of Ohio (the "State") to perform additional investigational and remedial activities. This covenant not to sue and release of liability ("Covenant") applies to the Property that has undergone a Phase I or Phase II property assessment in compliance with ORC Chapter 3746 and OAC Chapter 3745-300 or has been the subject of remedial activities conducted under ORC Chapter 3746 and OAC Chapter 3745-300 to address a release of hazardous substances or petroleum, and the assessment or the remedial activities demonstrate or result in compliance with applicable standards.

(ECF No. 38-8, Ex. H). In addition, the Final Orders and Covenant prescribe several terms and conditions, most of which pertain to recording the environmental covenant and the agreement, providing notification if the property is transferred or assigned, and complying with a risk mitigation plan. The Final Orders and Covenant also outline the limits of the covenant, including:

10.    The Covenant shall not apply:

    a.    To claims for natural resource damages the State may have pursuant to Sections 107 or 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. 9607 and 9613, as amended.

    b.    To claims the State may have pursuant to Section 107 of CERCLA, 42 U.S.C. 9607, as amended, for costs other than those for damages to natural resources, provided that the State incurs those other costs as a result of an action by the United State Environmental Protection Agency.

    c.    As otherwise specifically provided in ORC Chapter 3746, including but not limited to obligations arising under other applicable laws and hazardous waste generator closure obligations for the accumulation areas at the Property under the Resource Conservation and Recovery Act, 42 U.S.C. 6901, et seq., as amended, or ORC Chapter 3734, or the regulations adopted thereunder.

(*Id.*).

Defendants argue that these excerpts show the Final Orders and Covenant do not constitute an administrative settlement sufficient to trigger a Section 113 contribution claim for three primary reasons: (1) the Final Orders do not contain explicit language necessary to constitute an

administrative settlement for purposes of Section 113; (2) the Final Orders do not resolve FIP Realty's response cost liability under CERCLA; (3) the Final Orders include a reservation of rights and conditions that prevent it from having finality and certainty the Sixth Circuit requires of administrative settlements under CERCLA Section 113.

### a. Whether the Final Orders Were Intended to Be an Administrative Settlement under CERCLA

Defendants first contend the Final Orders and Covenant must explicitly state that the settlement is intended to be an "administrative settlement" that resolves FIP's CERCLA liability to the State. In support, they cite three cases where the state agreement at issue contained this type of explicit language and was found to constitute an "administrative settlement" for purposes of Section 113. *See Tennessee v. Roane Holdings Ltd.*, 835 F. Supp. 2d 527, 541 (E.D. Tenn. 2011) ("The terms of the [Administrative Order of Consent] expressly state . . . that the AOC is an administrative settlement under CERCLA within the meaning of § 113(3)(B)."); *Booth Oil Site Adm. Grp. v. Safety-Kleen Corp.*, 532 F. Supp. 2d 477, 498−502 (W.D.N.Y. 2007); *Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, 427 F. Supp. 2d 279, 286−87 (W.D.N.Y. 2006). Defendants' argument confuses a sufficient condition for a necessary one. That these courts found the agreements to be "administrative settlements" because they explicitly state they are intended to constitute Section 113 settlements does not mean that administrative settlements *require* such explicit statements.

Defendants also cite *Florida Power* to support the contention that the Final Orders must explicitly state that a plaintiff's CERCLA liability is resolved in order to constitute an "administrative settlement." In *Florida Power*, the Sixth Circuit considered whether an "Administrative Orders by Consent" ("AOC") between the plaintiff and the U.S. Environmental Protection Agency constituted an "administrative settlement" under CERCLA. Before the court

16

was "the narrow legal question of whether those AOCs constitute 'administrative settlements'" for CERCLA purposes. *Id.* at 998. The court held that the AOC was not an administrative settlement, in part because the plaintiff and the United States EPA did not explicitly state that agreement constituted an administrative settlement or use language matching the statutory language in § 113(f)(3)(B). *Id.* at 1004−05. The court also suggested that the AOC's title contributed to its holding, since it did not label itself as an "administrative settlement." *See id.* (citing *Hobart*, 758 F.3d at 769).

Although *Florida Power* was issued by the Sixth Circuit, this case pertains to AOCs with the federal government, and therefore the holding does not control the outcome of this argument, which involves a covenant not to sue with a state government. The Sixth Circuit has not issued any opinion requiring this type of explicit language in covenants not to sue between plaintiffs and state EPAs in order to find an "administrative settlement" exists. CERCLA is also silent as to this condition, and this Court declines to impose it for the first time here.

### b. Whether the Final Orders Resolve FIP's Liability

Defendants next argue that the Final Orders must specifically release FIP's response cost liability under CERCLA in order to constitute an administrative settlement. The Final Orders and Covenant do not specifically release FIP's response cost liability under CERCLA. Instead, they state that the Covenant does not apply to "claims for natural resource damages" or "for costs other than those for damages to natural resources," pursuant to Section 107 or 113 of CERCLA. (ECF No. 28-8, Ex. H § 10(a)−(b)).

The issue of whether a non-CERCLA settlement agreement may give rise to a contribution action has also split the circuits. *See Asarco LLC v. Atl. Richfield Co.*, 866 F.3d 1108, 1119 (9th Cir. 2017). The Second Circuit holds that Section 113(f)(3)(B) creates a "contribution right only when liability for CERCLA claims, rather than some broader category of legal claims, is resolved."

17

*Consolidated Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 95 (2d Cir. 2005), *cert. denied*, *UGI Utils., Inc. v. Consolidated Edison Co.*, 551 U.S. 1130, (2006). Because resolution of liability for response actions is a prerequisite to a Section 113(f)(3)(B) suit, and a response action is a CERCLA-specific term, the court limits administrative settlements to those that resolve CERCLA liability. The court also points to legislative history, which it says "makes no mention of any intent to meddle with the contribution rules governing settlement of non-CERCLA claims." *Id.* Thus, the court did not consider a party's settlement agreement under state law to be an administrative agreement for Section 113(f) purposes. *Id.* at 96. Since this opinion was issued, however, the Ninth Circuit has noted that the Second Circuit's approach "may be shifting[,]" since it later "indicated agreement with the EPA's position that a CERCLA-specific settlement agreement is not necessary to maintain a § 113(f)(3)(B) contribution action." *Asarco LLC*, 866 F.3d at 1120 (citing *Niagara Mohawk Power Corp. v. Chevron USA, Inc.*, 596 F.3d 112, 126 n.15 (2d Cir. 2010)).

Opposite the Second Circuit's holding, the Third, Seventh, and Ninth Circuits have each held, "Section 113(f)(3)(B) does not state that the 'response action' in question must have been initiated pursuant to CERCLA." *Id.* (citing *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131 (3d Cir. 2013); *see also Refined Metals Corp. v. NL Indus. Inc.*, 937 F.3d 928, 932 (7th Cir. 2019). Most recently, in *Government of Guam v. United States*, the D.C. Circuit also joined this predominant view. 950 F.3d 104, 113−115. It agreed that "Congress did not intend to limit § 113(f)(3)(B) to response actions and costs incurred under CERCLA settlements," and that a non-[CERCLA] settlement agreement may form the necessary predicate for § 113(f)(3)(B) contribution action." *Id.* at 114 (quoting *Asarco*, 866 F.3d at 1119) (internal quotations omitted). These courts base their holdings, in part, on the language in various CERCLA provisions. Most significantly,

Section 113(f)(1) requires that a party first be sued under Section 106 or 117 before pursuing contribution, but Section 113(f)(3)(B) does not contain this language. Because the courts presume that Congress was intentional about these disparate provisions, the courts "conclude that a settlement agreement can trigger section 113(f)(3)(B) even if it never mentions CERCLA." *Id.* (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

The Court agrees with the Third, Seventh, and Ninth Circuits on their respective statutory readings. Section 113(f)(3)(B) requires a plaintiff to resolve its liability to a state "for some or all of the costs of any such action in an administrative . . . settlement[,]" but never refers to specific CERCLA provisions. 42 U.S.C. § 913(f)(3)(B). Per the first finding in the Final Orders and Covenant, the Ohio EPA did indeed "release FIP Realty Co., Ltd. . . . from all civil liability to the State of Ohio (the "State") to perform additional investigational and remedial activities." (ECF No. 28-8, Ex. H). FIP Realty has therefore met the requirements explicitly outlined by Section 113(f)(3)(B), and the fact that the Final Orders carve out the possibility of a future CERCLA liability does not weigh in favor of summary judgment for the Defendants.

### c. Whether the Final Orders Are Final and Certain

Last, Defendants argue that the Final Orders and Covenant are not "final and certain" and therefore cannot constitute an administrative settlement under CERCLA Section 113. To contend that the Final Orders are not a final resolution of FIP's liability, Defendants point to the reservation of rights provision and the conditions that are listed in the Final Orders. Defendants say these portions of the agreement prevent the Final Orders from qualifying as a CERCLA Section 113 administrative settlement "under Sixth Circuit law." (ECF No. 38 at 16). Defendants do not cite to

specific case law to support this claim, but this Court presumes they refer to *ITT Industries* and *Florida Power.* Accordingly, the Court analyzes Defendants' arguments through the lens of these two Sixth Circuit opinions.

In *ITT Industries*, the court found that the AOC at issue was not an administrative settlement, in part because the EPA had broadly reserved "under this Consent Order and CERCLA, including, but not limited to, the right to terminate this Consent Order, complete all [remediation] activities, and obtain reimbursement." *ITT Indus., Inc.*, 506 F.3d at 459−60. More specifically, the EPA also carved out its right to take legal action to adjudicate the plaintiff's liability "for failure to comply with the AOC, for costs of response (past, present or future), for costs of injunctive relief or enforcement, criminal liability, and other damages." *Id.* at 459. The *ITT* AOC also "reserved the EPA's 'right to take any other legal or equitable action as it deem[ed] appropriate and necessary.'" *Fla. Power Corp.*, 810 F.3d at 1003 (citation omitted). Because the EPA broadly reserved its rights, the court found that the AOC did not resolve any of the plaintiff's liability. *ITT Indus., Inc.*, 506 F.3d at 459.

In the case sub judice, Defendants highlight the Ohio EPA's reservation of rights to argue that the Final Orders do not resolve FIP's liability:

> Nothing in the Covenant limits the authority of the Director to request that a civil action be brought pursuant to the ORC or common law of the State to recover the costs incurred by Ohio EPA for investigating or remediating a release or threatened release of hazardous substances or petroleum at or from the Property, **when the Director determines that the release or threatened release poses an imminent and substantial threat to public health or safety in the environment.**

(ECF No. 28-8, Ex. H at 9−10) (emphasis added). This language is different from that in *ITT*. Unlike the *ITT* AOC, which allows the EPA to take legal or equitable action under a wide range of circumstances and whenever the EPA deems it appropriate, here the Final Orders and Covenant grant the Ohio EPA a limited ability to bring a civil action against FIP, and only if the Director

determines that there is an "imminent and substantial threat to public health or safety in the environment." (*Id.*). This provision is quite different from the broad reservation of rights the EPA retained in the *ITT* AOC, and because of its limited nature, does not detract from FIP Realty's resolution of liability. The Court therefore finds that this condition does not undermine the Final Orders' status as an administrative settlement.

In some circumstances, the Sixth Circuit also finds that conditions can detract from an AOC's status as an administrative settlement under Section 113. In *Florida Power*, for example, the court found that the AOC in question was not an administrative settlement because it explicitly withheld the resolution of the plaintiff's liability until after certain conditions were satisfied: "Following satisfaction of the requirements of this Consent Order, [plaintiff] shall have resolved [its] liability to EPA for the performance of the [remedial investigation/feasibility study] that is the subject of this Order." *Fla. Power*, 810 F.3d at 1004. The court found that this language explicitly conditioned the resolution of liability on the plaintiff's future performance. *Id.* Specifically, the court viewed the AOC as going "a step beyond the conditional covenants not to sue and reservation of rights in [other cases] to explicitly condition the resolution of liability on performance." *Id.* The court also favorably cited a Seventh Circuit decision that came to a similar conclusion when "the EPA expressly conditioned its covenants not to sue or take administrative action 'upon the complete and satisfactory performance by [plaintiffs] of their obligations under [the AOC]." *Id.* at 1002 (quoting *Bernstein v. Bankert*, 702 F.3d 964, 977, 983 (7th Cir. 2021), *amended and superseded on reh'g*, 733 F.3d 190 (7th Cir. 2013)).

Here, Defendants cite conditions within the Final Orders and Covenant to encourage this Court to conclude the Finals Orders are not an administrative settlement. They characterize these conditions as follows:

1. Plaintiff's ongoing implementation of and compliance with the Risk Mitigation Plan incorporated into the CNS;

2. Plaintiff's submission of a sworn annual notification to Ohio EPA to demonstrate the continuous implementation of the Risk Mitigation Plan at the FIP Site;

3. Plaintiff's ongoing implementation and maintenance of specified engineering controls at the FIP Site;

4. Plaintiff's continuous compliance with and effective performance of the applicable standards and remedial activities specified in the CNS and the DFFO; and

5. Plaintiff's continuous use of the FIP Site in compliance with the institutional controls identified in the Environmental Covenant.

(ECF No. 38 at 17) (citing ECF No. 28-8, Ex. H, ¶¶ 5−9).

The Court acknowledges that Final Orders contain conditions on these topics but finds a meaningful difference between these provisions and the *Florida Power* AOC conditions. In *Florida Power*, the release of the plaintiff's liability was contingent on the plaintiff's satisfaction of the conditions. *Fla. Power*, 810 F.3d at 1004 ("Following satisfaction of the requirements of this Consent Order, [plaintiff] shall have resolved [its] liability to [the] EPA[.]"). In essence, the AOC promised future liability release if the plaintiff fully performed the conditions. Here, however, the Final Orders and Covenant state up front that the "Ohio EPA hereby . . . releases FIP Realty Co., Ltd. . . . from all civil liability to the State of Ohio . . . to perform additional investigational and remedial activities." (ECF No. 28-8, Ex. H ¶ 1). Moreover, the conditions themselves do not describe the liability release as contingent upon their completion. Instead, they acknowledge that the "Covenant shall remain in effect for as long as the [FIP Site] continues to comply with the applicable standards upon which the [Final Orders are] based." (*Id.* ¶ 7). Alternatively, other conditions provide that the Final Orders could be voided or revoked if FIP Realty failed to comply. (*Id.* ¶¶ 8−9). Together, these provisions show that FIP Realty obtained release of liability through the Final Orders, and that this release did not require the completion of

22

conditions to become effective. For this reason, the Court declines to find that the conditions prevent the Final Orders from constituting an administrative settlement under Section 113.

In sum, this Court holds that the Final Orders and Covenant constitute an administrative settlement sufficient to trigger a Section 113 contribution claim. The Court therefore **DENIES** Defendants' motion for summary judgment on Count Two.

### 4. The Ohio VAP Claim (Count Four)

Defendants contend that FIP's Ohio VAP claim is time-barred as a matter of law. The statute of limitations for a cost recovery claim is "three years after the applicable no further action letter was submitted to the director of environmental protection under section 3746.11 of the Revised Code in connection with the voluntary action." Ohio Rev. Code § 3746.23.

The first finding in the Final Orders and Covenant states the following: "A No Further Action Letter, No. 16NFA657 (the 'NFA Letter'), was submitted on July 29, 2016, to the Director under the Voluntary Action Program on behalf of FIP Realty Co., Ltd. (the "Volunteer"), by Atul Pandey, P.E., a certified professional[.]" (ECF No. 28-8, Ex. H). The Amended Final Findings and Covenant issued on February 17, 2019 list the same date. (ECF No. 28-9, Ex. I). FIP Realty filed its Complaint on July 29, 2016, exactly three years after the date the Ohio EPA says FIP's NFA Letter was submitted to the Director. (ECF No. 1).

Ohio EPA's internal records, however, indicate that the agency received FIP's NFA Letter on July 25, 2016 (ECF No. 38 at 4). For example, a tabulation maintained by Ohio EPA listing all received NFA letters shows that FIP Realty's NFA Letter was received on July 25, 2016. (Pandey Dep., ECF No. 27-1., Ex. 30). Defendants interpret these records to mean that FIP Realty actually submitted the NFA Letter to the Ohio EPA Director earlier than July 29, 2016, because they maintain that "submission to" the EPA Director and "receipt" or "acknowledgement by" the

agency are functional equivalents. (ECF No. 27 at 7−8; ECF No. 38 at 5−7).[3] Accordingly, they

conclude that the NFA Letter submission date of July 29, 2016 that was listed by two different

Ohio EPA directors each constitute "an erroneous background recital" that should be disregarded

when applying the statute of limitations in this case. (ECF No. 27 at 5). They say that "no rational

jury could find anything other than [that these dates were] a typographical error."  (*Id.*) (quoting

*Horen v. Bd. of Educ. of City of Toledo Pub. Sch. Dist.*, 948 F. Supp. 2d 793, 814 (N.D. Ohio

2013)).

　　　Conversely, FIP Realty emphasizes the EPA's prior statements regarding the NFA Letter

submission. In particular, two separate official documents issued by two separate EPA directors

cite July 29, 2016 as the submission date to the Director for the Letter—once in the Final Orders

and Covenant, issued by Director Craig Butler on December 19, 2016; and again in the Amended

Covenant Not to Sue, issued by Director Laurie A. Stevenson on February 17, 2019. (ECF No. 28-

8, Ex. H; ECF No. 28-9, Ex. I). FIP argues that the Final Orders constitute an interpretation by the

Ohio EPA of its own statute, and that the Court should therefore give deference to that

interpretation. *See Bernard v. Unemployment Comp. Review Comm'n*, 136 Ohio St. 3d 264, 267,

994 N.E.2d 437 (2013) (quoting *Swallow v. Indus. Comm.*, 36 Ohio St.3d 55, 57, 521 N.E.2d 778

(1988)) ("[C]ourts must give due deference to an administrative interpretation formulated by an

agency that has accumulated substantial expertise, and to which the General Assembly has

delegated the responsibility of implementing the legislative command.").

　　　Additionally, after the NFA Letter was submitted to the Director, Mr. Pandey later

submitted two addenda to the Letter to the Director as well, on October 18 and November 10,

---

[3] In part, Defendants rely on regulations adopted pursuant to R.C. § 3746.04(B) define "Director" to mean "the director of the Ohio environmental protection agency or the director's designee." Ohio Admin. Code § 3745-300-01(D)(3).

2016. The Final Orders and Covenant stipulate that, "[f]or the purposes of these Findings and Orders, the term 'NFA Letter' includes the addenda." (*Id.*). Accordingly, FIP argues that the submission dates for the addenda to the Letter should also factor into the limitations period.

FIP Realty and Defendants have created a genuine dispute of material fact about the actions FIP Realty was required to take by July 29, 2019 in order to satisfy the statute of limitations. Viewing the facts in the light most favorable to FIP Realty, two different EPA directors cited July 29, 2019 as the date the NFA Letter was submitted to the Director. Accordingly, this Court finds that a reasonable jury could conclude that FIP Realty satisfied the statute of limitations outlined in Ohio Rev. Code § 3746.23. The Court therefore **DENIES** summary judgment for Defendants on Count Four.

### B. Whether FIP's Claims Are Otherwise Viable

Apart from their arguments regarding the viability of FIP's claims, Defendants also argue that summary judgment is warranted because no evidence supports FIP's claims. In particular, Defendants allege that FIP Realty has no "actual knowledge or evidence" that Defendants' predecessors used or released hazardous substances at the FIP Site between 1940 and 1970. (ECF No. 27 at 17). Defendants criticize FIP for relying on environmental reports  pertaining to the FIP Site prepared by its consultant, Pandey Environmental, to support its claims. (*Id.*).

CERCLA actions often rely on expert witness testimony where historical releases are at issue, including actions in the Southern District of Ohio. *See Lammers Barrel PRP Grp. v. Carboline Co.*, No. 3:17-CV-00135, 2020 WL 1491487, at *10 (S.D. Ohio Mar. 27, 2020) (quoting *Hobart Corp. v. Dayton Power & Light Co.*, 2017 U.S. Dist. LEXIS 197856, *23−27 (S.D. Ohio) ("Whether the waste at issue contained hazardous substances. . . is necessarily the subject of expert witness testimony."). In *Garrett Day LLC v. International Paper Co.*, Judge Rice described why

25

experts are often needed in CERCLA cases and explained how a plaintiff's expert testimony can

defeat summary judgment:

> Given that the contamination at issue in this case allegedly dates back more than a century
> and spans many decades, the mere non-surprising fact that Plaintiffs' lay witnesses could
> not identify specific dates of releases or disposals of hazardous substances does not warrant
> summary judgment at this juncture. An expert witness, knowledgeable not only about the
> hazardous substances found at the Site, but also about the [manufacturing processes that
> occurred on site], environmental regulations and typical disposal practices, as they existed
> during each relevant time period, may be able to establish the requisite causal connection.

No. 3:15-CV-36, 2019 WL 1331680, at *4 (S.D. Ohio Mar. 25, 2019), *reconsideration*

*overruled*, No. 3:15-CV-36, 2019 WL 6768669 (S.D. Ohio Dec. 12, 2019). The Court therefore

does not find issue with FIP Realty's reliance on its expert reports to support its claims.

Indeed, both parties have relied on their respective expert reports which, unsurprisingly,

arrive at conflicting conclusions. For example, FIP Realty's expert concludes in his expert report

that Defendants and their successors caused releases and disposal of TCE in the soil and

groundwater at the FIP Site. (Decl. of Gregory J. DeGulis, ECF No. 28, Ex. L.1). Defendants'

expert, on the other hand, concludes in his rebuttal report that "FG/GP, processor to International

Paper, most likely caused all or a significant part of the FIP [] Site groundwater impacts." (Decl.

of Ryan Fimman, ECF No. 28, Ex. L.2). These expert reports create genuine disputes of material

fact as to Defendants' liability for the hazardous substances found at the FIP Site, and they call for

resolution by a jury. The Court therefore **DENIES** summary judgment to Defendants on those FIP

claims that are not time-barred.

### V. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [#27] is

**GRANTED IN PART** and **DENIED IN PART.** Count One (Section 107 Cost Recovery Claim)

is hereby **DISMISSED**. The case will proceed to trial on Counts Two (Section 113(f) Contribution

Claim), Three (Claim of Declaratory Judgment under Section 1113(g)), and Four (Ohio VAP Claim).

       **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 1, 2021**